UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DISTRICT

| | |
|---|---|
| CITY OF FORT COLLINS,<br><br>    Plaintiff/Counterclaim Defendant,<br><br>  v.<br><br>OPEN INTERNATIONAL, LLC,<br><br>    Defendant/Counterclaim Plaintiff,<br><br>OPEN INVESTMENTS, LLC,<br><br>    Defendant. | Civ. No. 3:25-mc-155<br><br>CHALLENGE TO GARNISHMENT |

THIS FORM MAY BE USED BY THE DEBTOR <u>ONLY</u> FOR THE FOLLOWING PURPOSES:

(1) To claim such exemptions from garnishment as are permitted by law.

(2) To assert that property is not garnishable property under ORS 18.618.

(3) To assert that the amount specified in the writ of garnishment as being subject to garnishment is greater than the total amount owed.

CHALLENGE TO
GARNISHMENT - 1 -
Civ. No. 3:25-mc-155

THIS FORM MAY BE USED BY PERSONS OTHER THAN THE DEBTOR <u>ONLY</u> TO CLAIM AN INTEREST IN THE PROPERTY THAT IS GARNISHED.

THIS FORM MAY <u>NOT</u> BE USED TO CHALLENGE THE VALIDITY OF THE DEBT.

I/We claim that the following described property or money is exempt from execution or is not subject to garnishment:
  See attached Exhibit 1.

I/We believe this property is exempt from or not subject to garnishment because (the Notice of Exempt Property that you received lists most types of property that you can claim as exempt from or not subject to garnishment):
  See attached Exhibit 1.

I/We claim that the total amount owed is:
  See attached Exhibit 1.

I am a person other than the Debtor and I have the following interest in the property:

| | |
|---|---|
| Eric Levine, representing Open Investments, LLC | |
| Name | Name |
| */s/ Eric M. Levine* OSB No. 224393 | |
| Signature | Signature |
| Tonkon Torp LLP, 888 SW 5th Ave STE 1600, Portland, OR 97204 | |
| Address | Address |
| 503-802-2072 | |
| Telephone Number | Telephone Number |

TO BE COMPLETED BY GARNISHOR:

| NAME OF GARNISHOR: | NAME OF GARNISHEE: |
|---|---|
| City of Fort Collins | Tualatin Valley Water District |
| c/o Dorsey & Whitney LLP | TVWD Headquarters |
| 1400 Wewatta Street, Suite 400 | 1850 SW 170th Ave |
| Denver, CO 80202 | Beaverton, OR 97003 |

CHALLENGE TO
GARNISHMENT - 2 -
Civ. No. 3:25-mc-155

# EXHIBIT 1

I am an attorney with Tonkon Torp LLP, counsel for Open Investments, LLC ("Open Investments"). Open Investments is a person other than the debtor and has the following interest in the property:

Open Investments entered into a Secured Revolving Credit Agreement ("Agreement") with Open International LLC ("Debtor") on January 7, 2025. A copy of the Agreement is enclosed as Exhibit 1-A. As part of the Agreement, Debtor provided Open Investments with collateral in the form of a first priority continuing security interest in certain property. Also on January 7, 2025, Open Investments filed UCC Financing Statements in the State of Florida, recorded as 202500047103; and in the State of Oregon, as Filing Number 94078156. The UCC Financing Statements perfect Open Investments' first-priority, secured interest in all of Debtor's

> TITLE AND INTEREST IN AND TO ALL OF ITS REAL AND PERSONAL PROPERTY, TANGIBLE AND INTANGIBLE, WHEREVER SITUATED AND WHETHER NOW OWNED OR HEREAFTER ACQUIRED, INCLUDING ALL COUNTS, GOODS, INSTRUMENTS, CONTRACT RIGHTS, DOCUMENTS, CASH, DEPOSIT ACCOUNTS, SECURITIES ACCOUNTS, CHATTEL PAPER, GOODWILL, EQUIPMENT, FIXTURES, GENERAL INTANGIBLES, INVENTOR, INVESTMENT PROPERTY, ACCOUNTS RECEIVABLE, SECURITIES, LETTERS-OF-CREDIT RIGHTS, NEGOTIABLE COLLATERAL, COPYRIGHTS, PATENTS, TRADEMARKS, TRADE NAMES, INSURANCE POLICIES AND PRODUCTS AND PROCEEDS OF THE FOREGOING, TOGETHER WITH ANY SUCH PROPERTY NOW OWNER OR HEREAFTER ACQUIRED BY THE DEBTOR AND ITS SUBSIDIARIES AND WHEREVER LOCATED.

A copy of the UCC Financing Statements are attached as Exhibit 1-B and Exhibit 1-C.

The City of Fort Collins ("Garnishor") registered its foreign judgment on February 11, 2025. That is later in time than when Open Investments perfected its first priority security in Debtor's real and personal property.

Garnishor issued a writ of garnishment to Tualatin Valley Water District ("Garnishee"). The writ sought all property of the Debtor (including money) and all debts that Garnishee owes to the Debtor. Garnishee admitted that it "has a contract with [Debtor] dated October 15, 2020[.]" Under the contract, Debtor provides services in exchange for payment from Garnishee (the "Debts").

Open Investments has a first priority secured interest in the Debts. As of March 28, 2025, Debtor owes Open Investments $3,363,873.36 plus accrued and unpaid interests, costs, and fees. Open Investments provided Debtor written notice that Debtor is in default on the Agreement, the amount owing under the Agreement has accelerated, and Open Investments demanded that Debtor make payment. Until all amounts owing by Debtor to Open Investments are paid in full, all Debts owed by Garnishee to Debtor should be paid to Open Investments, and not Garnishor, notwithstanding any Writ of Garnishment issued by Garnishor to Garnishee.

Exhibit 1
Page 1 of 1

## SECURED REVOLVING CREDIT AGREEMENT

      **THIS SECURED REVOLVING CREDIT AGREEMENT** (this "**Agreement**"), dated as of January 7, 2025 (the "**Effective Date**"), is entered into by and between Open Investments, LLC, a Florida limited liability company (the "**Lender**"), and Open International LLC, a Florida limited liability company (the "**Borrower**" and, together with the Lender, the "**Parties**", and each a "**Party**").

### RECITALS

      **WHEREAS**, the Lender has previously made loans to the Borrower in the aggregate amount of $3,144,229.69 (Three Million One Hundred Eighty Eight Thousand One Hundred Sixty-Three Dollars and Fifty Cents) (the "**Existing Loans**");

      **WHEREAS**, absent further loans from the Lender, the Borrower will be unable to continue its operations;

      **WHEREAS**, as a condition of making future loans to the Borrower, the Lender requires that Borrower provide Lender with a first priority continuing security interest in certain collateral of Borrower to secure the Existing Loans as well as any future loans;

      **WHEREAS**, the Lender has agreed to provide the Borrower with, and the Borrower has agreed to accept from the Lender a secured revolving credit facility (the "**Facility**") in the aggregate principal amount of up to $2,000,000 (Two Million Dollars) (the "**Facility Cap**") (the Facility, together with the all other monetary obligations set forth in this Agreement, including but not limited to the Existing Loans and interest payments on the Facility and/or the Existing Loans, the "**Obligations**"), all subject to and in accordance with the terms and conditions set forth in this Agreement.

### AGREEMENT

      **NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Revolving Credit Facility.

    1.1. The Facility. Subject to the terms and conditions set forth in this Agreement, during the period commencing on the Effective Date and ending on January 6, 2031 (the "**Term**"), Lender will make available to the Borrower a revolving credit facility pursuant to which the Borrower may borrow funds in an aggregate principal amount not to exceed the Facility Cap.

    1.2. Revolving Advances. Lender will make advances to the Borrower under the Facility pursuant to the procedures set forth in this Agreement.

    1.3. Revolving Note. The advances under this Agreement shall be evidenced by a promissory note substantially in the form attached hereto and made a part hereof as Exhibit A (the "**Note**")

321805338.4

Exhibit 1-A
Page 1 of 15

1.4. Procedures for Borrowing.

    1.4.1.     During the Term, Borrower may notify Lender of Borrower's request for an advance under the Facility from time to time in accordance with the notice provision set forth in Section 9.7, below.

    1.4.2.     Each advance request shall set forth the amount requested, which shall not be less than $5,000 (Five Thousand Dollars), and the date that the funds are requested which shall not be earlier than five (5) business days after the date the request is received by Lender.

    1.4.3.     On the date requested in the advance request, provided no Event of Default has occurred and is continuing, Lender shall wire or transfer the amount of the advance into Borrower's account, provided that such advance does not cause the aggregate principal amount of the outstanding advances under the Facility to exceed the Facility Cap.

1.5. Repayment of Advances. All outstanding advances shall be due and payable in full on the last day of the Term. Notwithstanding the foregoing, all advances shall be subject to earlier repayment upon (x) acceleration upon the occurrence of an Event of Default under this Agreement, or (y) termination of this Agreement.

1.6. Interest.

    1.6.1.     The outstanding balance of the Facility, excluding any accrued but unpaid interest, shall bear simple interest at the Interest Rate.

    1.6.2.     Accrued and unpaid interest on the outstanding balance of the Facility shall be calculated on the first day of each month and paid on the 20th day of such month during the Term, commencing after the first advance or, at the option of the Borrower, added to the outstanding balance of the Facility, provided that such addition does not cause the aggregate principal amount of the outstanding advances under the Facility to exceed the Facility Cap. Any interest that is added to the outstanding balance of the Facility shall not bear any interest.

    1.6.3.     The "**Interest Rate**" as determined on the first day of each month in which any portion of the Obligations remains outstanding, shall be equal to the Applicable Federal Rate referred to in Treasury Regulations § 1.482-2(a)(2)(iii)(C) for short-term loans; provided, however, that the Interest Rate shall be subject to change in accordance with Section 5.2.2.

1.7. Lender's Right to Terminate. At the option of Lender in its sole discretion and upon written notice to the Borrower, Lender shall have the right to terminate this Agreement and/or make all Obligations immediately due and payable.

2. Payments. All payments hereunder shall be made at Lender's address set forth in the notice provision hereof or as otherwise may be designated by Lender in writing in accordance with the notice provision. Any payments hereunder that otherwise would be due on a day that is

not a business day shall be due, without premium or penalty, on the next business day thereafter.

The borrower, at its discretion, may make payments or capital or interest at any time.

<u>Set-Off Rights.</u> Borrower may, at its discretion, apply any amounts owed by Lender to Borrower, whether under this Agreement or any other agreement, as a credit against the outstanding principal or interest due under the Facility. Such set-off shall be automatically applied and reflected in both the Borrower's and Lender's records.

3. <u>Closing</u>.

    3.1. <u>Time and Place</u>. The closing of the transactions contemplated in this Agreement shall occur at a time and place mutually agreeable to the Lender and the Borrower (the "**Closing**").

    3.2. <u>Deliverables</u>. At the Closing, each party shall deliver to the other a duly executed copy of this Agreement. Additionally, the Borrower shall deliver to Lender the duly executed Note.

4. <u>Security</u>.

    4.1. <u>Grant of Security Interest</u>. To secure the prompt payment and performance of the Obligations, subject to the provisions set forth below, Borrower hereby grants to the Lender a first priority continuing security interest (the "**Security Interest**") in Borrower's right, title and interest in and to all of its real and personal property, tangible and intangible, wherever situated and whether now owned or hereafter acquired, including all accounts, goods, instruments, contract rights, documents, cash, deposit accounts, securities accounts, chattel paper, goodwill, equipment, fixtures, general intangibles, inventory, investment property, accounts receivable, securities, letter-of-credit rights, negotiable collateral, copyrights, patents, trademarks, trade names, insurance policies and products and proceeds of the foregoing, together with any such property now owned or hereafter acquired by the Borrower and its subsidiaries and wherever located (the "**Collateral**").

    4.2. <u>Authorization to File Financing Statements</u>. Borrower authorizes the Lender, at any time and from time to time, to file or record financing statements, amendments and continuations thereto, and other filing or recording documents or instruments with respect to any Collateral in such form and in such offices as the Lender reasonably determines appropriate to perfect, or continue or maintain perfection of, the security interests of the Lender under this Agreement, and such financing statements and amendments may describe the Collateral covered thereby as "all assets of the debtor" or words of similar

import. A copy of this Agreement shall be sufficient as a financing statement or other filing or recording document or instrument for filing or recording in any jurisdiction.

4.3. <u>Filing Costs</u>. Borrower shall pay the costs of, or incidental to, all UCC, documentary tax, and judgment searches and all recordings or filings of all financing statements, including, without limitation, any filing expenses incurred by the Lender pursuant to Section 4.2.

4.4. <u>Termination of Agreement and Security Interest</u>. Upon the indefeasible payment of the Obligations in full, this Agreement and the Security Interest shall terminate and all rights to the Collateral shall revert to the Borrower. Upon any such termination of the Security Interest, the Borrower shall be entitled to (i) the return, upon its request and at its reasonable expense, of such of the Collateral held by the Lender as shall not have been sold or otherwise applied pursuant to the terms hereof; and (ii) the filing by the Lender or delivery to the Borrower of a termination statement for each financing statement filed with respect to the Borrower, all without limiting the generality of the agreement by the Lender to, at the Borrower's reasonable expense, execute and deliver to the Borrower such other documents as the Borrower shall reasonably request to evidence such termination.

5. <u>Events of Default</u>.

   5.1. <u>Definition</u>. The occurrence of any one or more of the following events shall constitute an "**Event of Default**":

   5.1.1. the failure by the Borrower to pay any principal on the Obligations within (a) five (5) business days of the date the same shall become due and payable, or (b) such later date as determined by the Lender in its sole discretion;

   5.1.2. the Borrower shall be in material breach of this Agreement (other than a breach described in Section 5.1.1), which is not cured, if curable, within fourteen (14) days after written notice describing the breach;

   5.1.3. any representation or warranty made by the Borrower in this Agreement shall prove to have been misleading in any material respect on the date when made;

   5.1.4. a sale, lease, transfer or other disposition of all or substantially all of the assets of the Borrower;

   5.1.5. the Borrower files any petition or action for relief under any bankruptcy, reorganization, insolvency or moratorium law or any other law for the relief of, or relating to, debtors, now or hereafter in effect, or makes any assignment for the benefit of creditors or takes any corporate action in furtherance of any of the foregoing, or applies for or consents to the appointment of any custodian, receiver or trustee for all or any substantial part of its assets, or admits in writing that it is generally unable to pay its debts as they become due, or takes any action to authorize any of the actions or events set forth above in this paragraph;

   5.1.6. an involuntary petition is filed against the Borrower under any bankruptcy statute now or hereafter in effect;

    5.1.7.    a custodian, receiver, liquidator, trustee or assignee for the benefit of creditors (or other similar official) is appointed to take possession, custody or control of any property of the Borrower;

    5.1.8.    the Borrower adopts a resolution for liquidation, winding up or dissolution (or suffers any liquidation, wind-up or dissolution); or

    5.1.9.    the operations or transaction of the business of the Borrower is suspended, substantially curtailed, or ceased for a period longer than ninety (90) days.

5.2. <u>Remedies</u>.

    5.2.1.    <u>Acceleration</u>.  Upon the occurrence of any Event of Default, at the option of Lender and upon written notice to the Borrower, all Obligations shall be immediately due and payable and Lender shall have the right to terminate this Agreement; provided, however, that upon the occurrence of an Event of Default set forth in Sections 5.1.5 - 5.1.9, all obligations shall become due and payable immediately, with no further action required by the Lender.

    5.2.2.    <u>Default Interest</u>.  Upon the occurrence of any Event of Default, the Interest Rate shall be equal to the Interest Rate plus three percent (3%) until all such Events of Defaults have been cured, at which time the Interest Rate will return to the rate set forth in Section 1.6.3.

6. <u>Maximum Charges</u>.  In no event whatsoever shall interest and other charges charged pursuant to this Agreement exceed the highest rate permissible under law. In the event interest and other charges as computed under this Agreement would otherwise exceed the highest rate permitted under law, such excess amount shall be first applied to any unpaid principal balance, and if the then-remaining excess amount is greater than the previously unpaid principal balance, Lender shall promptly refund such excess amount to the Borrower and the applicable provisions of this Agreement shall be deemed amended to provide for such permissible rate.

7. <u>Representations and Warranties of the Borrower</u>.  The Borrower hereby represents and warrants to Lender as of the Effective Date as follows:

    7.1. <u>Organization</u>.  The Borrower is a limited liability company duly formed, validly existing and in active status under the laws of the State of Florida, with full power and authority to enter into and perform its obligations under this Agreement.

    7.2. <u>Authorization</u>.  This Agreement has been duly and validly authorized and executed by the Borrower and constitutes a valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws.

    7.3. <u>Title; No Other Liens</u>.  Except for the Security Interest and Permitted Liens, as defined below, Borrower owns each item of the Collateral free and clear of any and all liens, security interests, claims, charges, encumbrances, taxes and assessments. Borrower (a) is the record and beneficial owner of the Collateral pledged by it hereunder and (b) has rights

in or the power to transfer each item of Collateral in which a lien is granted by it hereunder, free and clear of any other lien except for Permitted Liens. The Security Interest shall be senior to all other liens on the Collateral other than Permitted Liens.

7.4. <u>Set-Off Rights.</u> The Parties acknowledge that any amounts owed by Lender to Borrower, whether currently existing or arising in the future, may be used by Borrower to reduce the Obligations under this Agreement, subject to prior written notice to the Lender.

   7.4.1. **Permitted Liens**" means:

      7.4.1.1. liens for taxes, assessments or governmental charges which are either not delinquent or are being contested in good faith by the Borrower;

      7.4.1.2. liens or deposits in connection with worker's compensation or other insurance or to secure customs' duties, public or statutory obligations in lieu of surety, stay or appeal bonds, or to secure performance of contracts or bids (other than contracts for the payment of money borrowed), or deposits required by law or governmental regulations or by any court order, decree, judgment or rule as a condition to the transaction of business or the exercise of any right, privilege or license; or other liens or deposits of a like nature made in the ordinary course of business;

      7.4.1.3. purchase money liens on property acquired in the ordinary course of business to finance or secure a portion of the purchase price thereof, and liens on property acquired existing at the time of acquisition, provided that in each case such lien shall be limited to the property so acquired and the liability secured by such lien does not exceed either the purchase price or the fair market value of the asset acquired; and

      7.4.1.4. mechanics', workers', materialmen's or other like liens arising in the ordinary course of business with respect to obligations which are not due or which are being contested in good faith.

7.5. <u>Security Interest.</u> This Agreement creates in favor of the Lender a legal, valid and enforceable first-priority security interest in the Collateral, except as limited by bankruptcy, insolvency, reorganization, moratorium, fraudulent conveyance and transfer, and similar law affecting the rights and remedies of creditors generally. When financing statements have been filed in the appropriate offices against the Borrower, the Lender will have, subject to Permitted Liens, a fully perfected first-priority lien on, and security interest in, the Collateral in which a security interest may be perfected by such filing.

8. <u>Representations and Warranties of the Lender.</u> The Lender hereby represents and warrants to Borrower as of the Effective Date as follows:

8.1. <u>Organization.</u> The Lender is a limited liability company duly formed, validly existing and in active status under the laws of the State of Florida, with full power and authority to enter into and perform its obligations under this Agreement.



8.2. <u>Authorization</u>. This Agreement has been duly and validly authorized and executed by the Lender and constitutes a valid and binding obligation of the Lender, enforceable against the Lender in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws.

8.3. <u>No Conflicts</u>. The execution, delivery and performance of this Agreement does not and will not (i) conflict with the organizational documents of the Lender, (ii) constitute a tortious interference with any contractual obligation of Lender or conflict with, result in a breach of or constitute (with or without notice or lapse of time or both) a default under any requirement of law or contractual obligation of Lender, or require termination of any contractual obligation of Lender, which violation, breach, default or termination, singly or in the aggregate, will result in, or is reasonably likely to result in, a material adverse effect, or (iii) result in or require the creation or imposition of any lien whatsoever upon any of Lender's assets.

9. <u>Miscellaneous</u>.

   9.1. <u>Further Assurances</u>. Each of the parties shall perform such further acts and execute such further documents as may reasonably be necessary to carry out and give full effect to the provisions of this Agreement and the intentions of the parties set forth in this Agreement.

   9.2. <u>Governing Law; Venue</u>. This Agreement shall be governed by and construed according to the laws of the State of Florida without regard to principles of conflict of laws. Any dispute, controversy, claim or civil action based upon, arising out of, or in any manner connected with this Agreement, its breach, or any of the transactions contemplated by this Agreement shall be commenced in and determined by the courts of proper subject matter jurisdiction located in and for Miami-Dade County, Florida. Each of the parties (a) irrevocably and unconditionally consents and submits to the *in personam* jurisdiction of such courts in any such action, (b) consents to service of process in accordance with the rules governing proceedings in any such court, and (c) irrevocably waives and covenants not to assert any objection to the laying of venue in any such court in any such action.

   9.3. <u>Waiver of Trial by Jury</u>. EACH PARTY HEREBY KNOWINGLY, IRREVOCABLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY ACTION, PROCEEDING OR COUNTERCLAIM BASED ON THIS AGREEMENT, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY DOCUMENT EXECUTED IN CONNECTION HEREWITH OR RELATED HERETO, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF THE OTHER PARTY. THIS PROVISION IS A MATERIAL INDUCEMENT FOR LENDER TO LOAN FUNDS TO COMPANY.

   9.4. <u>Successors</u>. Except as otherwise expressly limited herein, the provisions of this Agreement shall inure to the benefit of, and be binding upon, the successors, assigns, heirs, executors, and administrators of the parties hereto.

321805338.4

Exhibit 1-A
Page 7 of 15

9.5. <u>Assignment</u>. None of the rights, privileges, or obligations set forth in, arising under, or created by this Agreement may be assigned or transferred by any party hereto without the prior consent in writing of the other parties. Subject to the foregoing, this Agreement shall inure to the benefit of the Lender, its successors, assigns and representatives and shall bind the Borrower and its successors, assigns and representatives.

9.6. <u>Entire Agreement; Amendment and Waiver</u>. This Agreement, together with the recitals, schedules and exhibits hereto all of which are hereby incorporated into this Agreement as if fully set forth herein, constitutes the full and entire understanding and agreement between the parties with regard to the subject matter hereof and supersedes any prior agreements between the parties with respect to such subject matter. Any term of this Agreement may be amended and the observance of any term hereof may be waived (either prospectively or retroactively and either generally or in a particular instance) only with the written consent of the Borrower and the Lender.

9.7. <u>Notices.</u> Any notices, consents, waivers or other communications required or permitted to be given under the terms hereof must be in writing and will be deemed to have been delivered: (i) upon receipt, when delivered personally; or by email to addresses below; or (ii) upon the earlier of delivery or the first unsuccessful delivery attempt when sent with a nationally recognized overnight delivery service, in each case properly addressed to the party to receive the same. The addresses for such communications shall be:

If to Borrower:    Hernando.parrott@openint.com
Open International LLC
6060 SW 79th St
Coral Gables, FL 33156

With a copy to:    Clayton.parket@klgates.com
Clayton E. Parker, Esq.
K&L Gates LLP
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131

If to Lender:    William.corredor@openintl.com
Open Investments, LLC
13019 Mar Street
Coral Gables, FL 33156

With a copy to:    Clayton.parket@klgates.com
Clayton E. Parker, Esq.
K&L Gates LLP
200 South Biscayne Boulevard, Suite 3900
Miami, FL 33131

9.8. <u>Delays or Omissions</u>. No delay or omission to exercise any right, power, or remedy accruing to any party upon any breach or default under this Agreement, shall be deemed a waiver of any other breach or default theretofore or thereafter occurring. All remedies,

8

either under this Agreement or by law or otherwise afforded to any of the parties, shall be cumulative and not alternative.

9.9. <u>Severability</u>. If any provision of this Agreement is held by a court of competent jurisdiction to be unenforceable under applicable law, then such provision shall be excluded from this Agreement and the remainder of this Agreement shall be interpreted as if such provision were so excluded and shall be enforceable in accordance with its terms; provided, however, that in such event this Agreement shall be interpreted so as to give effect, to the greatest extent consistent with and permitted by applicable law, to the meaning and intention of the excluded provision as determined by such court of competent jurisdiction.

9.10. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts which may be delivered by email or electronically via DocuSign.

<i>Signature Page Follows</i>

**IN WITNESS WHEREOF,** the parties have signed this Agreement as of the date first written above.

**LENDER**

Open Investments LLC

By: _____

Name: William Corredor

Title: CEO


**BORROWER**

Open International, LLC

By: _____

Name: Hernando Parrott

Title: President

CONFIDENTIAL

**Exhibit A**

**Form of Note**

10



# SECURED REVOLVING CREDIT NOTE

**$2,000,000**  **Miami, Florida**
**January [●], 2025**

FOR VALUE RECEIVED, the undersigned Open International LLC, a Florida limited liability company (the "**Borrower**"), hereby unconditionally promises to pay to Open Investments, LLC, a Florida limited liability company ("**Lender**") at the office of the Lender at 13019 Mar Street, Coral Gables, FL 33156 or at such other place as Lender may from time to time designate in writing to the Borrower, in lawful money of the United States of America and in immediately available funds, the principal sum of up to TWO MILLION DOLLARS ($2,000,000).  This revolving credit note ("**Note**") is issued in accordance with the provisions of that certain Revolving Credit Agreement dated of even date herewith between Borrower and Lender (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**") and reference is hereby made to the Credit Agreement for a statement of the terms and conditions under which the Facility is provided and is required to be repaid.  All capitalized terms used herein (which are not otherwise specifically defined herein) shall be used in this Note as defined in the Credit Agreement.

The outstanding principal balance of the Facility shall be due and payable as provided for in the Credit Agreement.  The Borrower promises to pay interest from the date hereof until payment in full hereof on the unpaid principal balance of the Facility as may be due and owing from time to time at the rates and upon the schedule set forth in the Credit Agreement.

Upon the occurrence and during the continuance of an Event of Default, as provided in the Credit Agreement, the unpaid principal balance of the Facility may be declared, and immediately shall become, due and payable upon written notice to the Borrower without legal process of any kind. Presentment, demand, protest and notice of presentment, demand, nonpayment and protest are each hereby waived by the Borrower.

This Note is secured as set forth in the Credit Agreement.

Borrower hereby represents and warrants to the Lender (which representations and warranties shall be deemed to be repeated by the Borrower on each day any Obligations remain outstanding) that:

a) The Borrower is in active status under the laws of the State of Florida, with full power and authority to enter into and perform its obligations under this Agreement;

b) This Note has been duly and validly authorized and executed by the Borrower and constitutes a valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws; and

c) Borrower is the record and beneficial owner of the Collateral pledged by it to Lender.

**THIS NOTE SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES.**  Whenever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but in case any provision of or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby.  Whenever in this Note reference is made to Lender or the Borrower, such reference shall be deemed to include, as applicable, a reference to their respective successors and assigns.  The provisions of this Note shall be binding upon the Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

In addition to and without limitation of any of the foregoing, this Note shall be subject to all of general terms and conditions contained in Section 9 of the Credit Agreement, *mutatis mutandis*.

**OPEN INTERNATIONAL LLC**

By: _____

Name: _____

Title: _____

# SECURED REVOLVING CREDIT NOTE

**$2,000,000**                                                                                              **Miami, Florida**
                                                                                                                    January 7, **2025**

      FOR VALUE RECEIVED, the undersigned Open International LLC, a Florida limited liability company (the "**Borrower**"), hereby unconditionally promises to pay to Open Investments, LLC, a Florida limited liability company ("**Lender**") at the office of the Lender at 13019 Mar Street, Coral Gables, FL 33156 or at such other place as Lender may from time to time designate in writing to the Borrower, in lawful money of the United States of America and in immediately available funds, the principal sum of up to TWO MILLION DOLLARS ($2,000,000). This revolving credit note ("**Note**") is issued in accordance with the provisions of that certain Revolving Credit Agreement dated of even date herewith between Borrower and Lender (as amended, restated, supplemented or otherwise modified from time to time, the "**Credit Agreement**") and reference is hereby made to the Credit Agreement for a statement of the terms and conditions under which the Facility is provided and is required to be repaid. All capitalized terms used herein (which are not otherwise specifically defined herein) shall be used in this Note as defined in the Credit Agreement.

      The outstanding principal balance of the Facility shall be due and payable as provided for in the Credit Agreement. The Borrower promises to pay interest from the date hereof until payment in full hereof on the unpaid principal balance of the Facility as may be due and owing from time to time at the rates and upon the schedule set forth in the Credit Agreement.

      The Borrower may offset any amounts owed by the Lender to the Borrower against the outstanding principal or accrued interest due under this Note. Such set-off shall be automatically applied and reflected in both the Borrower's and Lender's records.

      Upon the occurrence and during the continuance of an Event of Default, as provided in the Credit Agreement, the unpaid principal balance of the Facility may be declared, and immediately shall become, due and payable upon written notice to the Borrower without legal process of any kind. Presentment, demand, protest and notice of presentment, demand, nonpayment and protest are each hereby waived by the Borrower.

      This Note is secured as set forth in the Credit Agreement.

      Borrower hereby represents and warrants to the Lender (which representations and warranties shall be deemed to be repeated by the Borrower on each day any Obligations remain outstanding) that:

    a)   The Borrower is in active status under the laws of the State of Florida, with full power and authority to enter into and perform its obligations under this Agreement;

    b)   This Note has been duly and validly authorized and executed by the Borrower and constitutes a valid and binding obligation of the Borrower, enforceable against the Borrower in accordance with its terms, except as may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws; and

1



    c) Borrower is the record and beneficial owner of the Collateral pledged by it to Lender.

**THIS NOTE SHALL BE GOVERNED BY, AND SHALL BE CONSTRUED AND ENFORCED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA, WITHOUT REGARD TO CONFLICTS OF LAW PRINCIPLES.** Whenever possible each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but in case any provision of or obligation under this Note shall be invalid, illegal or unenforceable in any jurisdiction, the validity, legality and enforceability of the remaining provisions or obligations, or of such provision or obligation in any other jurisdiction, shall not in any way be affected or impaired thereby. Whenever in this Note reference is made to Lender or the Borrower, such reference shall be deemed to include, as applicable, a reference to their respective successors and assigns. The provisions of this Note shall be binding upon the Borrower and its successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

    In addition to and without limitation of any of the foregoing, this Note shall be subject to all of general terms and conditions contained in Section 9 of the Credit Agreement, *mutatis mutandis*.

**OPEN INTERNATIONAL LLC**

By: _____

Name: <u>Hernando Parrott</u>

Title: <u>President</u>

| STATE OF FLORIDA UNIFORM COMMERCIAL CODE FINANCING STATEMENT FORM | CONFIDENTIAL |
|---|---|
| A. NAME & DAYTIME PHONE NUMBER OF CONTACT PERSON<br>K&L GATES LLP ATTN: CLAYTON PARKER; 3055393300<br><br>B. Email CLAYTON.PARKER@KLGATES.COM | Florida Secured Transaction Registry<br><br>**FILED**<br><br>2025 Jan 07 04:22 PM<br><br>********* 202500047103 ********* |
| C. SEND ACKNOWLEDGEMENT TO:<br>Name<br>Address<br>Address<br>City/State/Zip | **THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY** |

**1. DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (1a OR 1b) - Do Not Abbreviate or Combine Names

| 1.a ORGANIZATION'S NAME<br>OPEN INTERNATIONAL LLC | | | |
|---|---|---|---|
| 1.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 1.c MAILING ADDRESS Line One<br>6060 SW 79TH ST | This space not available. | | |
| MAILING ADDRESS Line Two | CITY<br>SOUTH MIAMI | STATE<br>FL | POSTAL CODE<br>33143 | COUNTRY<br>USA |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - INSERT ONLY ONE DEBTOR NAME (2a OR 2b) - Do Not Abbreviate or Combine Names

| 2.a ORGANIZATION'S NAME | | | |
|---|---|---|---|
| 2.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 2.c MAILING ADDRESS Line One | This space not available. | | |
| MAILING ADDRESS Line Two | CITY | STATE | POSTAL CODE | COUNTRY |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - INSERT ONLY ONE SECURED PARTY (3a OR 3b)

| 3.a ORGANIZATION'S NAME<br>OPEN INVESTMENTS LLC | | | |
|---|---|---|---|
| 3.b INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |
| 3.c MAILING ADDRESS Line One<br>13019 MAR STREET | This space not available. | | |
| MAILING ADDRESS Line Two | CITY<br>CORAL GABLES | STATE<br>FL | POSTAL CODE<br>33156 | COUNTRY<br>USA |

**4.** This **FINANCING STATEMENT** covers the following collateral:
ALL OF DEBTOR'S RIGHT, TITLE AND INTEREST IN AND TO ALL OF ITS REAL AND PERSONAL PROPERTY, TANGIBLE AND INTANGIBLE, WHEREVER SITUATED AND WHETHER NOW OWNED OR HEREAFTER ACQUIRED, INCLUDING ALL ACCOUNTS, GOODS, INSTRUMENTS, CONTRACT RIGHTS, DOCUMENTS, CASH, DEPOSIT ACCOUNTS, SECURITIES ACCOUNTS, CHATTEL PAPER, GOODWILL, EQUIPMENT, FIXTURES, GENERAL INTANGIBLES, INVENTORY, INVESTMENT PROPERTY, ACCOUNTS RECEIVABLE, SECURITIES, LETTER-OF-CREDIT RIGHTS, NEGOTIABLE COLLATERAL, COPYRIGHTS, PATENTS, TRADEMARKS, TRADE NAMES, INSURANCE POLICIES AND PRODUCTS AND PROCEEDS OF THE FOREGOING, TOGETHER WITH ANY SUCH PROPERTY NOW OWNED OR HEREAFTER ACQUIRED BY THE DEBTOR AND ITS SUBSIDIARIES AND WHEREVER LOCATED.

**5. ALTERNATE DESIGNATION** (if applicable)   ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR
☐ AG LIEN   ☐ NON-UCC FILING   ☐ SELLER/BUYER

**6. Florida DOCUMENTARY STAMP TAX** – YOU ARE REQUIRED TO CHECK **EXACTLY ONE** BOX
☒ All documentary stamps due and payable or to become due and payable pursuant to s. 201.22 F.S., have been paid.
☐ Florida Documentary Stamp Tax is not required.

**7. OPTIONAL FILER REFERENCE DATA**
0441452.00001

STANDARD FORM - FORM UCC-1 (REV.05/2013)   Filing Office Copy   Approved by the Secretary of State, State of Florida

Exhibit 1-B
Page 1 of 1



**UCC-1**

**STATE OF OREGON**
Corporation Division - UCC
255 Capitol Street NE, Suite 151
Salem, Or  97310-1327
(503) 986-2200
FilingInOregon.com

CONFIDENTIAL
Oregon Secretary of State
Filing Number: 94078156
Filing Date: Jan 7, 2025 01:36 PM

Filed Electronically

*Action:*  Initial Filing

*Debtor -*
Organization Name:  Open International LLC
Address 1:  6060 SW 79th ST
City:  South Miami
State:  OR,  USA
Zip Code:  33143

*Secured Party -*
Organization Name:  Open Investments, LLC
Address 1:  13019 Mar Street
City:  Coral Gables
State:  FL,  USA
Zip Code:  33156

*Collateral -*
All of Debtor's right, title and interest in and to all of its real and personal property, tangible and intangible, wherever situated and whether now owned or hereafter acquired, including all accounts, goods, instruments, contract rights, documents, cash, deposit accounts, securities accounts, chattel paper, goodwill, equipment, fixtures, general intangibles, inventory, investment property, accounts receivable, securities, letter-of-credit rights, negotiable collateral, copyrights, patents, trademarks, trade names, insurance policies and products and proceeds of the foregoing, together with any such property now owned or hereafter acquired by the Debtor and its subsidiaries and wherever located.

*Filer Information*
K&L Gates LLP
ATTN: Clayton Parker
200 South Biscayne Blvd.
Suite 3900
Miami, FL 33131

*Optional Filer Reference Data*
0441452.00001