IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CITY OF FORT COLLINS**, a Colorado home-rule municipality,<br><br>      Plaintiff and Counterclaim-Defendant,<br><br>    v.<br><br>**OPEN INTERNATIONAL, LLC**,<br><br>      Defendant and Counterclaim-Plaintiff.<br><br>    and<br><br>**OPEN INVESTMENTS, LLC**,<br><br>      Defendant. | Case No. 3:25-mc-00155-IM<br><br>**OPINION AND ORDER DENYING CHALLENGE TO GARNISHMENT** |

Benjamin D. Greenberg, Dorsey & Whitney LLP, 701 Fifth Avenue, Suite 6100, Seattle, WA 98104; and Case Collard, Dorsey & Whitney LLP, 1400 Wewatta Street, Suite 400, Denver, CO 80202. Attorneys for Plaintiff and Counterclaim-Defendant.

Eric M. Levine and Timothy J. Conway, Tonkon Torp LLP, 888 SW Fifth Avenue, Suite 1600, Portland, OR 97204. Attorney for Defendant Open Investments, LLC.

PAGE 1 – ORDER ON CHALLENGE TO GARNISHMENT

**IMMERGUT, District Judge.**

Plaintiff the City of Fort Collins prevailed in a lawsuit against Defendants Open International, LLC, and Open Investments, LLC, and now seeks to collect on its judgment. Plaintiff applied for a writ of garnishment from this Court directed to the Tualatin Valley Water District, ordering the District to withhold payment of debts it owes to Defendant Open International. Open Investments filed a challenge to the writ of garnishment, arguing Open International is in default on an agreement with Open Investments that has a superior priority to the judgment. This Court finds that the agreement between Open Investments and Open International is a fraudulent effort to evade the enforcement of the judgment. This Court accordingly denies the challenge to garnishment.[1]

## BACKGROUND

### A. The Parties

Defendants are Open Investments, a holding company that operates a variety of companies under the "Open" brand name, and Open International, a utility billing software company. Declaration of William Corredor, ECF 23 ¶¶ 3–4. Plaintiff is the City of Fort Collins, a Colorado municipality that entered into an agreement with Defendants to develop and implement a billing-management platform for its municipal utilities. *See* D. Colo. Judgement Order, ECF 17-1 at 1.

### B. The Colorado Lawsuit

Plaintiff was unsatisfied with the billing system Defendants delivered and sued for fraudulent inducement in the U.S. District Court for the District of Colorado. Jury Verdict, ECF

---

[1] Defendants did not request oral argument, and this Court finds this matter suitable for resolution without oral argument. *See* Local Rule 7-1(d)(1).

PAGE 2 – ORDER ON CHALLENGE TO GARNISHMENT

17-2. Both Open Investments and Open International were represented by the same counsel in that litigation. *See, e.g.*, Notice of Entry of Appearance of Laurie Webb Daniel, No. 21-cv-02063 (D. Colo. Apr. 8, 2024), ECF 336. The jury found for Plaintiff and the Colorado District Court entered judgment for Plaintiff in the amount of $19,891,447. Amended Final Judgment, ECF 1 at 3. The judgment was entered against both Defendants without distinction. *Id.*

Defendant Open Investments obtained a stay of enforcement of the judgment in May 2024 by posting a bond for the full amount of the judgment plus interest. D. Colo. Stay Order, ECF 17-4. The stay expressly did not extend to Open International, providing that "the City's right and ability to execute on the judgment against Open International, LLC is not impacted in any way by this stay." *Id.* at 2. At the time, Defendant's counsel stated in an email to Plaintiff's counsel that "Open International doesn't have anything in the way of assets." ECF 17-5 at 2.

On December 20, 2024, Plaintiff filed a motion in the District of Colorado to allow Plaintiff to register the judgment against Open International in the District of Oregon. D. Colo. Registration of Judgment Order, ECF 1 at 5. Plaintiff explained that it had learned during post-judgment discovery that, although Open International has no significant assets in Colorado, it had a significant customer in Oregon. *Id.* at 7. Plaintiff subsequently identified this customer as the Tualatin Valley Water District. Application for Writ of Garnishment, ECF 2 ¶ 4. The District of Colorado granted the City's motion to register the judgment in Oregon on January 31, 2025. *See* ECF 1 at 7–8.

On January 7, 2025, Open Investments entered into a Secured Revolving Credit Agreement with Open International. Challenge to Garnishment, ECF 15, Ex. 1 & 1-A. In exchange for up to $2,000,000 in credit from Open Investments, this Agreement gave Open Investments a first-priority security interest in all of Open International's property, including its

PAGE 3 – ORDER ON CHALLENGE TO GARNISHMENT

accounts receivable and contract rights. ECF 15, Ex. 1-A at 12 & 1-C. Open Investments perfected its security interest by filing a UCC financing statement with the Oregon Secretary of State the same day. ECF 15, Ex. 1-C.

**C. The Oregon Action**

Plaintiff registered its judgment in this District on February 11, 2025, ECF 1, and sought a writ of garnishment directed to the Tualatin Valley Water District, ECF 2. The Clerk of this Court issued the writ of garnishment on March 7, 2025. ECF 3. Open Investments and Open International, represented by the same counsel, jointly filed a motion for relief from judgment, ECF 5, which this Court denied, ECF 10. The Water District responded, explaining that it had a contract with Open International under which it paid Open International a minimum of $58,295 each month, plus a variable monthly cost for project support fees. ECF 13 at 6.

At 7:21 PM on March 28, 2025, Open International informed Open Investments by email that the writ of garnishment would make it impossible for Open International to meet its financial obligations, "including payments to providers and outstanding debts." ECF 23-5. Open Investments responded on March 31, 2025, with a Notice of Default informing Open International that its inability to pay its debts meant it was in default on the Agreement. ECF 23-6 at 1. The Notice of Default states that all of Open International's obligations under the Agreement "are immediately due and payable, effective as of the date of the entry of the judgment owing to the City of Fort Collins." *Id.*

The same day, at 4:54 PM, Open Investments' current counsel noticed an appearance in this case. Notice of Substitution, ECF 14. Open Investments' current counsel replaced the attorneys who, before March 31, had been representing both Open Investments and Open International. At 5:01 PM, Open Investments filed a challenge to the writ of garnishment, arguing that its January 2025 Agreement affords it a first-priority secured interest in the

PAGE 4 – ORDER ON CHALLENGE TO GARNISHMENT

payments from the Water District. ECF 15, Ex. 1. Specifically, Open Investments asserts that Open International is in default on the January 2025 Agreement, accelerating the credit agreement and granting Open Investments a priority interest in the payments. *Id.*; Notice of Default, ECF 19. Open Investments contends that the monthly payments from the Water District should thus be paid to Open Investments and not Plaintiff. ECF 15, Ex. 1.

Plaintiff filed a brief in opposition to Open Investments' challenge, ECF 17, and Defendants filed a Reply, ECF 22.

## STANDARDS

Money judgments entered in federal court are enforceable through "the procedure of the state where the court is located" unless there is an applicable federal statute. Fed. R. Civ. P. 69(a)(1). Under Oregon law, any person with an interest in garnished property may file a challenge to garnishment. O.R.S. 18.725.

## DISCUSSION

Plaintiff does not dispute that Open Investments' prior perfected security interest would ordinarily have priority over the later-recorded judgment. *See* O.R.S. 79.0317. Plaintiff argues, however, that the Agreement creating Open Investments' interest was fraudulent under Oregon's Uniform Voidable Transactions Act. Plaintiff's Opposition to Challenge to Garnishment ("Opp'n"), ECF 17 at 11–22. Open Investments raises several procedural challenges and argues that Plaintiff has not demonstrated actual or constructive fraudulent intent. Reply in Support of Challenge to Garnishment ("Reply"), ECF 22 at 13–20.

This Court finds that Plaintiff has demonstrated the existence of several badges of fraud with regard to the Agreement, such that the actual purpose of the Agreement was to hinder or delay Plaintiff in collecting on the judgment in the Colorado action. This Court will therefore deny the challenge to the writ of garnishment.

PAGE 5 – ORDER ON CHALLENGE TO GARNISHMENT

This Court first addresses Open Investments' procedural objections. Finding that they are without merit, this Court turns to Plaintiff's fraud arguments.

**A. Procedural Objections**

Open Investments first raises a pair of procedural objections, contending that Plaintiff's argument is not properly before this Court. Reply, ECF 22 at 13–14. This Court finds that both of these objections lack merit.

First, Open Investments contends, without citation to any authority, that Open International is a "necessary party" to any proceeding that resolves the validity of the Agreement, but "has not been invited to brief the issues or otherwise be heard." *Id.* at 13. This argument is perplexing. Open International is a party to this action and fully capable of filing a brief or requesting some other opportunity to be heard. *See, e.g.*, Open International & Open Investment's Motion for Relief from Judgment, ECF 5.

Second, Open Investments contends that Plaintiff's fraudulent transfer argument raises "numerous factual issues that must be resolved by a jury." Reply, ECF 22 at 13 (citing *Hunters Ridge Condo. Ass'n v. Sherwood Crossing, LLC*, 285 Or. App. 416, 446–47 (2017)). This Court first notes that, in federal court, a party's right to a jury trial "is a federal issue controlled by federal law," not state law. *In re Cnty. of Orange*, 784 F.3d 520, 527 (9th Cir. 2015); *see Dexia Credit Local v. Rogan*, No. 02 C 8288, 2009 WL 528902, at *1 (N.D. Ill. Mar. 2, 2009) (noting the right to a jury trial is controlled by federal law in proceedings to enforce a judgment).

The Seventh Amendment guarantees the right to a jury trial "[i]n Suits at common law." U.S. Const. amend. VII. This action is not a separate suit that would require a jury trial. Rather, this action seeks to enforce a judgment following a jury trial in another federal court. This action "only facilitates collection of a pre-existing judgment," which "does not change the amount of

money or property owed." *Fidelity Nat'l Fin., Inc. v. Friedman*, 935 F.3d 696, 702 (9th Cir. 2019). No legal relief can be awarded to Plaintiff in this proceeding, so no jury right attaches.

## B. Actual Fraud[2]

Oregon's Uniform Voidable Transactions Act provides that an "obligation incurred by a debtor is voidable as to a creditor" if the debtor incurred the obligation "[w]ith actual intent to hinder, delay or defraud any creditor." O.R.S. 95.230(1)(a). As the Ninth Circuit has acknowledged, "[i]t is often impracticable, on direct evidence, to demonstrate an actual intent to hinder, delay or defraud." *In re Acequia, Inc.*, 34 F.3d 800, 805 (9th Cir. 1994) (citation omitted) (interpreting the same language in the Bankruptcy Code). The common law of fraudulent

---

[2] Plaintiff also contends that the Notice of Default from Open Investments to Open International was insufficient to establish a legitimate breach of the Agreement. Opp'n, ECF 17 at 9–11. Plaintiff contends that the alleged default was caused by the judgment Plaintiff won in the Colorado action, which was known to both parties at the time of the Agreement. *Id.* at 9.

The Notice of Default is an unusual document. It declares that Open International is in default because of "the entry of a judgment" against it, as well as its "inability to pay its debts as they become due." Notice of Default, ECF 19. Judgment was entered against Open International in March 2024, *see* Amended Final Judgment, ECF 1 at 3, before the Agreement was signed in January 2025. Given the size of the judgment and Open International's lack of assets, *see* ECF 17-5 at 2, Open International has been unable to pay its debts since March 2024.

In response to these breaches—both of which, again, predate the Agreement—the Notice of Default purports to make all obligations under the Agreement "immediately due and payable, effective as of the date of the entry of the judgment owing to [Plaintiff]." ECF 19. The Notice of Default thus backdates the acceleration to a date nine months before the purportedly breached Agreement was signed, based on facts that existed nine months before the Agreement.

Nonetheless, the Notice of Default appears to be facially adequate under the Agreement, which provides that a default occurs if Open International "admits in writing that it is generally unable to pay its debts as they become due." ECF 15, Ex. 1-A, § 5.1.5. Open International did so, ECF 23-5, which means that "all obligations shall become due and payable immediately" under the Agreement, ECF 15, Ex. 1-A, § 5.2.1. This Court shares Plaintiff's skepticism of the rationale expressed in the Notice of Default, but considers this argument as providing additional reason to find that Open Investments is fraudulently attempting to interfere with Plaintiff's collection efforts, as opposed to an independent reason to deny the challenge to garnishment.

PAGE 7 – ORDER ON CHALLENGE TO GARNISHMENT

conveyance therefore allows courts to infer fraudulent intent "from the circumstances surrounding the transfer, taking particular note of certain recognized indicia or badges of fraud." *Id.* at 806 (citation omitted); *see Twyne's Case* (1601) 76 Eng. Rep. 809, 812–14; 3 Co. Rep. 80b, 80b–81a.

Oregon has enumerated the common law badges of fraud in O.R.S. 95.230(2):

> In determining actual intent under subsection (1)(a) of this section, consideration may be given, among other factors, to whether:
> (a) The transfer or obligation was to an insider;
> (b) The debtor had retained possession or control of the property transferred after the transfer;
> (c) The transfer or obligation was disclosed or concealed;
> (d) Before the transfer was made or obligation was incurred, the debtor was sued or threatened with suit;
> (e) The transfer was of substantially all the debtor's assets;
> (f) The debtor had absconded;
> (g) The debtor had removed or concealed assets;
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (j) The transfer had occurred shortly before or shortly after a substantial debt was incurred; and
> (k) The debtor had transferred the essential assets of the business to a lienor who had transferred the assets to an insider of the debtor.

This list is non-exhaustive, and a court may infer actual intent "from the presence of listed factors or other suspicious factual circumstances surrounding the transfer." *Morris v. Nance*, 132 Or. App. 216, 221 (1994). This is a "case-by-case factual determination" where the plaintiff bears the burden of showing "actual intent by a preponderance of the evidence." *Id.* at 221, 223. "The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud." *In re Acequia*, 34 F.3d at 806 (citation omitted). A defendant may demonstrate an absence of fraudulent intent "by evidence that supports an alternative motive." *Morris*, 132 Or. App. at 221.

PAGE 8 – ORDER ON CHALLENGE TO GARNISHMENT

Plaintiff argues that the Agreement between Open Investments and Open International, ECF 15, Ex. 1-A, was a fraudulent transfer under O.R.S. 95.230 intended to hinder or delay Plaintiff's efforts to enforce its judgment. Opp'n, ECF 17 at 12–21. Open Investments responds that the non-fraudulent purpose for the Agreement was to allow Open International to continue to operate, explaining that "the writ of garnishment threatened [Open International's] business operations." Reply, ECF 22 at 16. Open Investments contends that Plaintiff is attempting to undermine the stay of execution that Open Investments received by posting a bond in the Colorado case. *Id.* at 18.

As explained below, this Court finds that sufficient badges of fraud are present to allow this Court to infer actual fraudulent intent.[3] Far from offering a reasonable, non-fraudulent explanation of its motivation, Open Investments' explanation of the purpose of the Agreement all but admits that it was created to hinder or delay Plaintiff's execution on the judgment. This Court will accordingly deny the challenge to garnishment.

### 1. Badges (a) and (b)

The first badge of fraud is that the "transfer or obligation was to an insider," O.R.S. 95.230(2)(a), while the second is that the debtor "retained possession or control of the property transferred after the transfer," O.R.S. 95.230(2)(b). An insider is defined by statute as either a "member of the debtor" or a "manager, or other person in control, of the debtor." O.R.S. 95.200(8)(d). Open International is 80% owned by Open Investments. Declaration of William Corredor, ECF 17-10 ¶ 7. The first badge is therefore present because Open Investments controlled Open International at the time of the loan, and the second is present because all of the

---

[3] Because this Court finds that Plaintiff has made an adequate showing of actual fraudulent intent, it need not reach Plaintiff's other arguments about constructive fraud under O.R.S. 95.240(2) or 95.230(1)(b).

PAGE 9 – ORDER ON CHALLENGE TO GARNISHMENT

property at issue remained under the control of Open Investments, either directly or through its 80% interest in Open International.

### 2. Badge (c)

The third badge supports an inference of fraud if the transfer was concealed and favors the debtor if the transfer was disclosed. O.R.S. 95.230(2)(c). Plaintiff contends the transfer was concealed because Defendant did not supplement its post-judgment discovery production. Opp'n, ECF 17 at 15–16. Defendant contends it was disclosed through the filing of the UCC financing statement with the Oregon Secretary of State. Reply, ECF 22 at 15.

This Court finds that this factor favors Plaintiff. Defendant's filing of the UCC financing statement does not explain its reluctance to produce any information about this arrangement. When Plaintiff's counsel asked Defendant's counsel in this action to provide a copy of the Notice of Default, Defendant's counsel—who authored the Notice—stated that it would be "more efficient" for Plaintiff to seek it from Open International's appellate counsel in the Colorado action. ECF 18-1, Ex. A at 3.[4] That attorney likewise refused.[5] ECF 18-2, Ex. B. Whether or not Rule 26 *required* this disclosure, it does not weigh in Defendant's favor now that it refused to provide the Notice of Default that forms the basis of its challenge to the

---

[4] Open Investments' Reply does not explain why counsel believed it would be more efficient for Plaintiff to seek this document in another proceeding from counsel for an ostensibly separate defendant, as opposed to requesting it from its author.

[5] Open International's Colorado counsel characterized Plaintiff's request for a copy of the Notice of Default as an "improper attempt to circumvent the discovery limitations in the Oregon court." ECF 18-1, Ex. B at 4. That attorney represented to the Colorado court that, "[a]pparently, there are limitations on discovery in the City's garnishment proceeding in Oregon." Open International's Position Statement, No. 21-cv-02063 (D. Colo. Apr. 10, 2025), ECF 416. This Court is unaware of any such limitations and has not imposed any.

PAGE 10 – ORDER ON CHALLENGE TO GARNISHMENT

garnishment. *See* ECF 15. This Court finds it difficult to understand why counsel would refuse to provide this document other than to conceal the transfer.

### 3. Badges (d) and (j)

The fourth badge permits an inference of fraud if "the debtor was sued or threatened with suit" before the obligation was incurred, O.R.S. 95.230(2)(d), while the tenth badge permits an inference of fraud where "[t]he transfer had occurred shortly before or shortly after a substantial debt was incurred." O.R.S. 95.230(2)(j). The Court finds these badges strongly favor an inference of fraud in this proceeding. The Agreement was formed shortly after Plaintiff moved the District of Colorado to permit Plaintiff to register its judgment in this District,[6] and the default occurred on the same day as Open Investments filed the present challenge to garnishment. It is difficult to see this timing as anything other than an effort to frustrate Plaintiff's efforts to execute on the judgment.

Open Investments' argument on this point confirms that this was the purpose of the Agreement. Open Investments explains that the Agreement was formed because "the writ of garnishment threatened [Open International's] business operations." Reply, ECF 22 at 16. By allowing Open Investments to claim a priority over the judgment, the Agreement ensures that Open International will be able to continue to operate. *See id.* at 17 (explaining that "both [Open International] and [Open Investments] have an interest in keeping [Open International's] business operating"). Where Open Investments goes wrong is in describing this interest as a "legitimate purpose" for the Agreement. *Id.* The Agreement ensures that Open International can

---

[6] Plaintiff moved to register the judgment on December 20, 2024, and the Agreement was signed January 7, 2025. This 18-day period includes the Christmas and New Year's holidays.

PAGE 11 – ORDER ON CHALLENGE TO GARNISHMENT

continue to operate by hindering Plaintiff's efforts to enforce the judgment. This conduct is prohibited. *See* O.R.S. 95.230(1)(a).

### 4. Badges (e) and (i)

The fifth badge of fraud permits an inference of fraud where "[t]he transfer was of substantially all the debtor's assets," O.R.S. 95.230(2)(e), while the ninth badge permits an inference where "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred." O.R.S. 95.230(2)(i). Open Investments contends that the fifth badge does not apply here because "[t]he assets here were only secured by [Open Investments], ownership was not transferred to [Open Investments]." Reply, ECF 22 at 20. While technically true, the effect of the Notice of Default is to transfer the value of Open International's contract with the Water District to Open Investments. Facilitating this asset-shifting was, as described above, the apparent purpose of the Agreement.

Plaintiff has likewise established that Open International was likely insolvent at the time of the Agreement. Insolvency is defined in the statute as "at fair valuation, the sum of the debtor's debts is greater than all of the debtor's assets." O.R.S. 95.210(1). At the time of the Agreement, Open International owed nearly $20 million dollars to Plaintiff, while its only assets were its contract with the Water District and a bank account in Florida containing approximately $4,000. *See* ECF 17-14 at 9. Badge (i) therefore favors an inference of fraud.

### 5. Badge (g)

The seventh badge permits an inference of fraud when the debtor removes or conceals assets. O.R.S. 95.230(2)(g). The parties dispute when and how Defendants produced information about Open International's contract with the Water District during post-judgment discovery. Opp'n, ECF 17 at 19; Reply, ECF 22 at 15. Without wading into what should or should not have been disclosed during discovery, this Court finds that this factor favors Plaintiff for a simpler

PAGE 12 – ORDER ON CHALLENGE TO GARNISHMENT

reason: Open International told Plaintiff in April 2024 that Open International "doesn't have anything in the way of assets." ECF 17-5, Ex. 5. That was, evidently, not true—Defendant's counsel overlooked the contract with the Water District, which led to this proceeding.

### 6. Badge (h)

Finally, the eighth badge considers whether "[t]he value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred." O.R.S. 95.230(2)(h). Plaintiff characterizes the Agreement as providing Open International with nothing of substance, because Open Investments already guaranteed the performance of the Water District contract and thus was obligated to provide funds to ensure its performance. Opp'n, ECF 17 at 20.

Open Investments responds by contending that the Agreement allowed Open International "the benefit of being able to continue in business and receive an operating line of credit." Reply, ECF 22 at 18. But as Open Investments acknowledges, Open Investments "cannot perform the services performed by [Open International]" and there exists no other company that can "step in and promptly do so." *Id.* at 2. The guarantee effectively obligates Open Investments to ensure Open International remains afloat to provide these services. The Agreement does not give Open International anything that Open Investments was not obligated, through its agreement with the Water District, to provide already. This badge therefore favors Plaintiff.

\* \* \*

Nine of the eleven badges of fraud support a finding that the Agreement was intended to at least delay Plaintiff's claim, and likely to hinder its claim as well. Because the Agreement was made with impermissible intent, it is avoidable by creditors, including Plaintiff. The Agreement therefore cannot serve as the basis for a challenge to the writ of garnishment.

If Open Investments wanted to ensure Plaintiff could not enforce the judgment against Open International, it had an option: it could have added Open International to the bond it posted to stay execution of the judgment pending appeal. It chose not to do so, presumably because one of its theories on appeal is that Open Investments is a separate entity that cannot be held liable for the judgment against Open International. Defendant-Appellants' Opening Brief at 41–47, *Open Int'l, LLC v. City of Fort Collins*, No. 24-1152 (10th Cir. Nov. 14, 2024), ECF No. 46.

This Court acknowledges that denying the challenge to garnishment will place both Defendants in a difficult position. If the payments from the Water District are redirected to Plaintiff, Open International will have no funds to continue operating. Either Open Investments will have to subsidize Open International's performance of its contract with the Water District by paying subcontractors on Open International's behalf, effectively "fund[ing] continuing payments under the judgment to Fort Collins even though the judgment has been stayed," Reply, ECF 22 at 18, or Open International will collapse, potentially exposing Open Investments to liability from the Water District and, more importantly, disrupting utility service to a large swath of Washington County, *id.* at 17. But Open Investments could have avoided placing itself in this situation by adding Open International to the bond it posted, and deliberately chose not to do so.

Open Investments faults Plaintiff for its "overheated rhetoric," *id.* at 1, but if Open Investments succeeds in its argument on appeal, its failure to post a bond and the minimal other assets possessed by Open International would leave Plaintiff with nothing. That Plaintiff would aggressively seek to collect on what may be the only assets it will ever be able to find should have come as no surprise to Open Investments. Parties are entitled to make their own strategic choices in litigation. But they are not entitled to avoid the consequences of those choices.

## CONCLUSION

The Challenge to Garnishment, ECF 15, is DENIED.[7]

**IT IS SO ORDERED.**

DATED this 7th day of May, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

---

[7] Plaintiff seeks sanctions, arguing that the fraudulent transfer necessarily means that Open Investments' challenge to the garnishment was made in bad faith. Opp'n, ECF 17 at 22. Any award of sanctions in this action would be an exercise of this Court's inherent authority, not O.R.S. 18.715. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46–47 (1991). A "specific finding of bad faith" is required to impose sanctions. *Yagman v. Republic Ins.*, 987 F.2d 622, 628 (9th Cir. 1993). Although this Court agrees that some of Defendants' conduct in the course of this scheme reflects some level of bad faith, this Court finds that a rule where every finding of a fraudulent transfer amounts to a finding of bad faith to support a sanctions award is inadvisable. The Court accordingly denies the motion for sanctions, with leave to renew if Defendants engage in future conduct that appears intentionally aimed at frustrating Plaintiff's ability to collect.